[Criminal No. 142.   Filed November 9, 1900.]

[62 Pac. 693.]

JOSEPH TAMBORINO, Defendant and Appellant, v. TER-RITORY OF ARIZONA, Plaintiff and Respondent.

1. CRIMINAL LAW — EVIDENCE—CROSS-EXAMINATION—SCOPE—IMPEACH-MENT.—In a prosecution for assault with intent to commit murder a witness for the defense testified that she was present when the quarrel began; that she became frightened and ran out of the room; that there was then a noise like the report of a gun, and then a pistol-shot, but that she did not see defendant have a gun. *Held*, that it was proper to allow the district attorney to ask in cross-examination whether she did not say when she ran into an adjoining place, "Tamborino has shot the butcher," and questions of similar import, as it is proper to bring out everything said by a witness about the transaction, either at the time it happened or afterwards, inconsistent with or tending to contradict her evidence.

2. SAME—SAME—IMPEACHMENT—WHAT STATEMENTS MAY BE.—Proof of contradictory statements upon a material point made by a witness may be introduced in evidence to impeach the witness after he has answered that he does not remember whether he made the contradictory statements or not. He cannot by answering that he has *no recollection of having made the former statements* imputed to him defeat the right of the impeaching party to prove that he did make such statements.

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Yavapai. R. E. Sloan, Judge.   Affirmed.

The facts are stated in the opinion.

Herndon & Norris, and J. H. Collins, for Appellant.

"The test as to whether a fact inquired of on cross-examination is collateral is this: Where a witness on cross-examination by the state denies having stated out of court that defendant had done certain things, evidence is inadmissible, as his statements are not evidence against the defendant." *People* v. *Worthington,* 105 Cal. 689, 38 Pac. 689.

"The test as to whether a witness's statement is material so as to be subject to contradiction by the witnesses of the opposite party is to inquire as to whether it relates to matter which such party would be permitted to give in evidence as part of his case." McKelvy on Evidence, p. 332; *Attorney-General* v. *Hitchcock,* 1 Exch. 91; *Hildeburn* v. *Curran,* 65 Pa. St. 63; *Woodward* v. *Easton,* 118 Mass. 403; *Briggs* v. *Harvey,* 130 Mass. 186; *Winchell* v. *Winchell,* 100 N. Y. 159, 2 N. E. 897; *State* v. *Patterson,* 74 N. C. 157; *Powers* v. *Leach,* 26 Vt. 270; *People* v. *Knapp,* 42 Mich. 267, 36 Am. Rep. 138, and note, 3 N. W. 927; *Hart* v. *State,* 15 Tex. App. 202, 49 Am. Rep. 188.

The impeachment of the credit of a witness by showing former inconsistent statements "is only allowable when the statement sought to be contradicted relates to a material part of the case." *Rainey* v. *State,* 20 Tex. App. 473; *Lane* v. *Bryant,* 6 Gray, 246; *Drake* v. *State,* 29 Tex. App. 265, 15 S. W. 725; *Holms* v. *Anderson,* 18 Barb. 420; *Seller* v. *Jenkins,* 97 Ind. 435; *Dunn* v. *Dunn,* 11 Mich. 284; *Fisher* v. *Hood,* 14 Mich. 189; *Leavitt* v. *Stansell,* 44 Mich. 424, 6 N. W. 855; *Howard* v. *Patrick,* 43 Mich. 121, 5 N. W. 84; *Hamilton* v. *People,* 46 Mich. 186, 9 N. W. 247; *Driscoll* v. *People,* 47 Mich. 413, 11 N. W. 221; *McDonald* v. *McDonald,* 67 Mich. 122, 34 N. W. 276; *People* v. *Morrigan,* 29 Mich. 4.

"A witness cannot be impeached by irrelevant statements brought out on cross-examination." *United States* v. *White,* 5 Cranch C. C. 38, Fed. Cas. No. 16,675; *Bell* v. *Woodman,* 60 Me. 465; *State* v. *Burner,* 64 Me. 267; *Carpenter* v. *Ward,* 30 N. Y. 243.

"But the statement which it is intended to contradict must involve a fact in evidence. If confined to opinion when opinion is not at issue, or to other irrelevant matter, the cross-examining party is bound by the answer." *McNeil* v. *Arnold,*

22 Ark. 477; *McKern* v. *Calvert,* 59 Mo. 244; *State* v. *Reid,* 60 Me. 355; *Brackett* v. *Weeks,* 43 Me. 291; *Sumner* v. *Crawford,* 45 N. H. 416.

C. F. Ainsworth, Attorney-General, for Respondent.

STREET, C. J.—The appellant, Joseph Tamborino, was tried in the district court of Yavapai County for the crime of "assault with intent to commit murder," alleged to have been committed on the eighth day of May, 1899, upon the person of one Ed. A. Tovrea, and was found guilty of "assault with a deadly weapon." The evidence for the prosecution tended to prove: That on the night of the 8th of May, 1899, the prosecuting witness, Tovrea, was sitting in a wine or card room in the rear of the Red Light Saloon, in the town of Jerome, with Lillie Lindsley and Rose Worth. That the Red Light Saloon was kept by Stella Carroll; and that the appellant, Tamborino, about 11:30 o'clock at night, went into the barroom of the saloon, and, being very friendly with the proprietress, Stella Carroll, she and he, after having first obtained permission of the Tovrea party, passed from the barroom into the room where the Tovrea party was sitting, and joined them in drinks. That, after the lapse of half an hour or such a matter, Tamborino, without any apparent provocation, pulled his gun from his bosom or waist, and, with an oath, said he would kill Tovrea. That Tovrea, to preserve his life, quickly sprang to Tamborino, and grappled with him, and a struggle ensued for the possession of the gun. In the struggle the gun was discharged, the charge hitting no one, but passing into the floor. When Tovrea and Tamborino first clinched, they fell against a mirror in the front of an upright bed and broke it. The girls ran from the room. An officer ran in and separated the men, taking the gun from the hands of both of them. The evidence upon the part of the defendant was not different from that of the prosecution up to the time of the beginning of the struggle between the two men. The defendant's evidence tended to show that the struggle was commenced by Tovrea, and that Tamborino pulled his gun after Tovrea had clinched him, thrown him down, and was chewing his finger, and that Tamborino pulled the gun solely in self-defense. The evidence offered by the prosecu-

tion so strongly tended to prove the truth of the charge in the indictment that the fact whether the combat was commenced as detailed by the prosecution was a vital point in the case. Stella Carroll, with whom the appellant was on very friendly terms, gave evidence in behalf of the defendant, and said: "Tamborino got up, and walked across the room, and picked up a match from the dresser, and walked back to his chair and sat down. By and by he got up to leave the room, and just as he raised up from his chair—sitting in a rocking-chair —just as he raised up, he made a motion like to pull his vest down, about to brush his coat; and with that the butcher [Tovrea], from where he sat, sprang at him, and they came together; and there was a folding-bed set cater-corner, and the crash the folding-bed made frightened me,—the three of us there,—and we all hollered. . . . It sounded like a gun, the crash of that folding-bed. . . . When that noise was made, I hollered, 'Oh, my God! Don't.' . . . We all started to run. Just as we ran out of the room, we heard a pistol-shot. . . . I ran up the street, right through the saloon, into the restaurant. . . . I didn't see a gun. . . . I was in the room, about ten feet from Tamborino. . . . The two men came together at the chair where Tamborino was sitting. . . . At the time Tovrea made the lunge for Tamborino, I didn't see Tamborino have a gun. . . . At no time did I see a gun." Stella Carroll was cross-examined by the district attorney, and asked, over the objection of the defendant, the question: "At that time and place, when you ran in there,—the restaurant,— didn't you exclaim, in a crying mood, that 'Joe Tamborino has shot the butcher'?" Again: "Didn't you say that 'Joe has killed the butcher'?"—to both of which questions she replied: "I couldn't say positively whether I said that or not. I was excited. I don't remember whether I did or not. . . . I says, 'Oh, my God! Something has occurred,' or 'Something has happened,' or something like that. That's all I recollect." Afterwards the district attorney called to the stand witnesses who testified that Stella Carroll, when she went through the saloon, was crying, and said: "Oh, Joe Tamborino has killed the butcher," and "Joe Tamborino has shot the butcher." The only questions raised on this appeal by the defendant relate to such cross-examination and the admission of this impeaching testimony. The defendant assigns as error—First, that the court erred in permitting the

question to be put to Stella Carroll on cross-examination as to whether she had made this statement in the Elite Saloon; and, second, that the court erred in permitting Emmett Ewing and Lillie Lindsley to testify as to Stella Carroll having made this statement in the Elite Saloon.

There could have been no error in permitting the district attorney to cross-examine Stella Carroll as to all that she said about the transaction, either at the time it happened or afterwards, inconsistent with or tending to contradict her evidence. Her evidence tended to lead to the conclusion that she had seen nothing more than she narrated on her main examination, and it would be the right of the prosecution to examine her, if she did not make statements which would show she had seen and heard more than she related. It would be his right to test that question, and obtain from her on cross-examination all that she saw and heard. If the district attorney could be permitted to rebut the statements of Stella Carroll that she had not said the things imputed to her, it then would be his duty to lay the ground for an impeachment by such cross-examination. So the whole question comes as to whether those statements were material or immaterial. If such statements were immaterial, the district attorney would be bound by the answers made by the witness on cross-examination. If they were material to the issue being tried, he would have a right to show that she had made such statements, after she had either denied making them, or had said that she had no recollection of making them, and did not remember. Proof of contradictory statements made by a witness may be introduced in evidence to impeach the witness after he has answered that he does not remember whether he made the contradictory statements or not. He cannot, by answering that he has no recollection of having made the former statements imputed to him, defeat the right of the impeaching party to prove that he did make such statements. It seems to this court that the impeaching evidence and the expression, "Tamborino has shot the butcher," or "Tamborino has killed the butcher," taken in connection with the evidence which the witness Stella Carroll gave on her direct examination, and with her hasty departure from the room at the outbreak of the difficulty, makes it quite material. The question to be solved was not whether in fact Tamborino had shot Tovrea, nor whether in fact Tovrea had shot Tamborino, nor whether,

indeed, either of them had been shot, but who had commenced the affray, or had it been commenced by Tamborino in such a way as to make the verdict of the jury of "assault with a deadly weapon" a correct verdict. Whether Tamborino had drawn his gun at the time the conflict commenced in such a way as to become the aggressor was an important inquiry. Stella Carroll was called as a witness for the defendant, was friendly to the defendant, and her evidence tended to show that Tamborino was not the aggressor. Witnesses for the prosecution testified that the affair was commenced by Tamborino drawing his gun and threatening to kill Tovrea; whereupon Stella Carroll and the other girls ran out of the room. As they were going out, a shot was fired. If, almost immediately afterwards, Stella Carroll declared that "Tamborino has shot the butcher," it is a matter of fair argument that she based that statement upon what she saw and heard in the room before she left,—that which the other witnesses saw and heard,—the pulling of the gun by Tamborino, and the threat by him, when he pulled his gun, that he was going to kill Tovrea. Under that view of the evidence it seems to be not an immaterial question and answer by which the district attorney would be bound, but appears to be a material question to the issue in the case as to whether Tamborino made an assault on Tovrea with a deadly weapon. Had Stella Carroll remained in the room during the struggle, and been in the room at the time the shot was fired, and seen the struggle of the two men for the pistol, and then made the declaration, after the affray was over, under a misapprehension of the result of the shot, that Tamborino had shot the butcher, such a statement might have been immaterial, as not tending to show who had commenced the affray; but her statement of the supposed result of the shot, which she did not see fired, but only heard the report of while she was running from the scene, might fairly be examined into, tending to contradict her statements when she says she did not see a gun, that she saw nothing in Tamborino's hands, and that Tovrea commenced the affair. The judgment of the district court is affirmed.

Davis, J., concurs.

Doan, J., dissents.