571 P.2d 665

**STATE of Arizona, Appellee,**

v.

**Lex LaRue ALLEN, Appellant.**

No. 3743.

Supreme Court of Arizona, En Banc.

Nov. 7, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III and Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

Harlan Heilman, Yuma, for appellant.

Lex LaRue Allen, in pro per.

HAYS, Justice.

The appellant, Lex LaRue Allen, was convicted by a jury of two counts of kidnapping while armed with a gun and one count of robbery while armed with a gun and one count of first degree murder on October 15, 1976. A timely notice of appeal was filed, and the Supreme Court of Arizona has jurisdiction pursuant to A.R.S. § 13–1711.

## FACTS

The facts in this case are very sketchy, but apparently the two victims, Seth and Guy, went to a home in Yuma, Arizona, for the purpose of purchasing some marijuana. When they arrived at the home, Seth went into the yard to talk to Tucker with whom he had arranged the marijuana purchase. Guy remained in the car. In addition to Tucker, three or four other men were present in the house or yard. Seth was told to go into the house and shortly thereafter he was told to go into a back bedroom. As he entered the back room, he was shoved from behind and found himself facing a black man armed with a shotgun. The man accused him of being a "narc," ordered him to lie face down on the floor, and repeatedly threatened him with death if he moved. Seth was then "hog-tied" with wire. Tape was also put across Seth's mouth so that he could not speak. One or more persons removed everything from Seth's pockets, including his wallet, key ring and wedding ring.

A few minutes later Guy apparently became worried about Seth and came to the door of the home to inquire where Seth was. Guy was invited inside and hit over the head. Seth could hear Guy moaning and groaning. A few minutes later Guy was brought into the same room where Seth was.

About this time Seth heard some commotion in the driveway which sounded like cars pulling in and out. Very shortly after this, Guy was picked up and carried out the back door. Guy was still groaning and mumbling. Seth heard someone say "look out for the old man in the yard next door"; and he heard a muffled shot. A few minutes later the men returned and picked up Seth and carried him out the door and placed him in the trunk of Guy's car.

After the car began to move, Seth was able to break the wire which was binding him and he found a tool with which he pried up the trunk lid. He then jumped out of the trunk of the car while it was still moving, rolled on the street several times, and ran toward Houston Photos, a business in Yuma. As he was running he heard a shot.

Finding the front door of Houston Photos locked, he smashed his way through the plate glass of the door and went looking for someone to help him. During this time he also heard another shot. Shortly, Seth found a janitor in the building and asked him to call the police. When the police and ambulance arrived, they found Guy's car parked near Houston Photos with the doors and trunk lid still open, and they found Guy's body wedged on the floor between the front and back seat. Guy had been shot twice in the head; he was still alive at this time, but he died a few minutes later.

The surviving victim, Seth, testified that Allen, the appellant, looked similar to the man who threatened him with the shotgun in the back bedroom of the house where he went to purchase marijuana. A fingerprint of Allen's was found on the door of Guy's car. The woman at whose home Allen was staying testified that he had been asleep in the bedroom where Seth was bound and

Guy was later carried just shortly before the alleged criminal acts began to occur. There was no testimony positively indicating that Allen had left the house after this woman last saw him in the bedroom. This woman, who had been at the laundromat while all the events of the crime were occurring, also testified that just about an hour before the criminal events occurred she had seen appellant and codefendant Tucker attempting to saw the barrel off a shotgun. This apparently was the shotgun used in the crimes.

Appellant did present several alibi witnesses who testified that he was at the Elks Club playing pool at or about the time that the criminal events were taking place. However, on cross-examination, it became apparent that these witnesses were really not sure exactly what time they had seen the appellant at the Elks Club.

## WAS EVIDENCE IMPEACHING THE KEY PROSECUTION WITNESS IMPROPERLY ADMITTED?

The determinative issue in this case is whether evidence impeaching the key prosecution witness was properly admitted. Before proceeding further, we note that this trial occurred before the effective date of the new Arizona Rules of Evidence (effective September 1, 1977).

The trial court denied the defendant's motion for judgment of acquittal. The court indicated that were it not for the evidence impeaching the prosecution witness, Tucker, it might be inclined to grant the judgment of acquittal.

■ The state correctly argues that under *State v. Skinner*, 110 Ariz. 135, 515 P.2d 880 (1973), impeachment evidence may be used substantively; therefore, impeachment evidence may be considered by the court in determining whether there is sufficient evidence to support a verdict of guilty. If so, then it is proper for the court to deny defendant's motion for acquittal. However, both the state and the appellant seemed to have overlooked a key point in *Skinner* which is that the impeachment evidence must still be properly admitted under

the traditional rules for impeaching a witness. 110 Ariz. at 142, 515 P.2d at 887.

In this case, the impeached witness, Tucker, was the prosecution's own witness and a coparticipant in the crime. When first questioned on direct examination, Tucker testified very evasively and reluctantly. The prosecutor very soon requested a bench conference which was not recorded by the court reporter. Soon after the bench conference, the prosecutor changed to the use of leading questions and when the defense objected, the judge stated that Tucker was here subject to cross-examination. Therefore, it is apparent that the bench conference concerned the prosecutor's request to cross-examine his own witness, and that the judge granted this request.

■ Whether a witness may be cross-examined by the party calling him is within the sound discretion of the trial court and this discretion will not be disturbed absent a showing of abuse. *State v. Lane*, 69 Ariz. 236, 211 P.2d 821 (1949). The trial judge properly permitted the prosecutor to cross-examine his own witness in this case because the record clearly shows that Tucker was a hostile witness. *State v. Michael*, 103 Ariz. 46, 436 P.2d 595 (1968). Therefore, it was proper to cross-examine the witness Tucker as to his prior inconsistent statements regarding the crimes.

■ It was also proper to introduce a police officer's testimony regarding the prior inconsistent statements which the witness Tucker made to him. The record shows that Tucker was hostile and an adverse witness. One may certainly impeach an adverse witness. If the prior inconsistent statements are material, evidence of these statements may be introduced if the witness on cross-examination denies making the statements, claims no recollection of the statements or equivocates regarding his making the statements. *See Tamborino v. Territory*, 7 Ariz. 194, 62 P. 693 (1900).

■ Appellant also complains that the trial court erred in allowing the witness Seth to testify regarding a conversation

which he had with the witness Tucker concerning the arrangements he made to buy some marijuana. We hold that this was not reversible error. The conversation to which Seth testified in no way linked appellant to the crimes under consideration. Also, Tucker was subsequently called as a witness and he testified about the arrangement to sell Seth a baggie of marijuana. Appellant's counsel made no objection to Tucker's testimony which elicited the same information. Thus, if it was error to admit Seth's testimony, it was at most harmless error.

Having reviewed the entire trial court record and finding no reversible error, the judgments of conviction and sentences are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concurring.