627 P.2d 689

**STATE of Arizona, Appellee,**

v.

**Josef P. CRUZ, Appellant.**

No. 5109.

Supreme Court of Arizona,
En Banc.

April 6, 1981.

Rehearing Denied May 6, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Jack Roberts, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by John Foreman, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

The appellant, Josef P. Cruz, was indicted and tried for second degree murder arising from the shooting death of Leonard Mollon in the parking lot of Carl Hayden High School. A jury found him guilty and he was sentenced to serve eight years in the Arizona State Prison. A timely notice of appeal was filed and we accepted jurisdiction pursuant to 17A A.R.S., Supreme Court Rules, rule 47(e)(5).

The shooting was the culmination of a dispute between the boys concerning appellant's belief that Mollon had been responsible for the repeated vandalism and theft of various items from appellant's automobile. On the morning of February 20, 1979, Mollon had accosted appellant in the parking lot, punching him numerous times. Appellant did not attempt to fight back but words were exchanged and Mollon offered to "finish it" in the park during lunch. Mollon then departed for class but appellant returned to his automobile and drove to a position near Mollon's vehicle. According to appellant's testimony, his intention at this time was to "mess up" Mollon's car. Before appellant could follow through with this avowed intention, Mollon, accompanied by a group of friends, returned to the parking lot. Appellant remained in his vehicle

with the engine running and a shotgun pointing out of the driver's window. More words were exchanged and Mollon approached appellant's vehicle. As Mollon walked towards appellant, the gun discharged, mortally wounding Mollon in the chest.

The sole issue on appeal is whether evidence impeaching the testimony of appellant's sister was properly admitted.

Appellant claims that the trial court erred when it allowed the victim's girlfriend, Rosemary Santana, to testify to a statement allegedly made by the appellant's sister, Viviana Cruz, which repeated an inculpatory statement allegedly made by appellant. At trial, the prosecution attempted to establish that appellant had threatened Mollon after the fight but before the shooting. The prosecutor called the sister, Viviana, and questioned her regarding conversations she allegedly had with appellant and Rosemary:

Q. Did [appellant] tell you what he was going to do to Leonard Mollon for thinking that he took his stereo?

A. He wasn't sure. He didn't say anything.

Q. He didn't tell you what he was going to do?

A. No, sir.

\* \* \* \* \* \*

Q. BY MR. IMBORDINO: So Joe didn't tell you he was going to do anything to Leonard Mollon?

A. No, sir.

Q. Did he talk about Leonard on the way to school that morning, the morning of the 20th?

A. No, sir.

\* \* \* \* \* \*

Q. Do you know Rosemary Santana?

A. Yes, sir.

Q. You were with her that morning, weren't you, on the way to class?

A. Yes, sir.

Q. Did you tell Rosemary that your brother was going to shoot Leonard Mollon and get it over with?

A. No, sir.

The prosecution then called Rosemary Santana and elicited the following testimony:

Q. Do you know Viviana Cruz?

A. Yes.

Q. Was she there?

A. At the fight?

Q. No, when you were walking to class?

A. Yes, she came up behind me, and she started walking with us.

\* \* \* \* \* \*

Q. Did you say anything to Viviana?

A. No.

Q. Did she say anything to you?

A. Yes.

Q. What was that?

A. She asked me why Leonard wanted to fight Joe or why they fought. And I told her because—

MR. CAVNESS: Just a moment, if the Court please. I am going to object to this for the reason that it's hearsay, and it's not binding on any of the parties to this proceeding.

THE COURT: ... I am going to overrule your objection, Mr. Cavness.

\* \* \* \* \* \*

MR. IMBORDINO: Go ahead.

A. She asked me why they fought. And I told her that she already knew because Joe had been calling Leonard a punk and he said he was going to get him. And then she goes—she was saying that they shouldn't have fought. And I go, "Well, Joe was the one that was telling that he was going to get Leonard and everything, and I guess Leonard just got fed up with it and they just fought." And then we were just arguing.

Q. Did she say anything to you about a shooting?

MR. CAVNESS: Just a moment if the court please. I'm going to object on the grounds that it's leading.

THE WITNESS: Yes.

THE COURT: I am going to overrule your objection.

Q. BY MR. IMBORDINO: What did she tell you?

A. She told me—she goes, "Well, I am not worried. Joe said that he was going to shoot Leonard and get it over with."

Appellant characterizes this last statement as inadmissible double hearsay and urges that this line of questioning was an improper means of impeaching the testimony of Viviana Cruz. The state counters by arguing there is no hearsay, much less double hearsay, because the statement allegedly made by appellant was an admission by a party-opponent, admissible under 17A A.R.S. Rules of Evidence, rule 801(d)(2)(A). Further, the state argues that since Viviana Cruz testified and denied having told Rosemary Santana that appellant made such a statement, Viviana Cruz was properly impeached by showing prior inconsistent statements, which were not hearsay under 17A A.R.S., Rules of Evidence, rule 801(d)(1)(A).

■ We acknowledge that the state is correct in its assertion that Rosemary Santana's testimony is not regarded as hearsay under rule 801(d)(1)(A). Although Rosemary's testimony is classic hearsay under traditional analysis and falls within the definition of hearsay contained in rule 801(c), subsection (d)(1)(A) creates a broad exception to the hearsay rule for prior inconsistent statements.*

In this respect, the Arizona rule is much less restrictive than its federal counterpart, which requires that the prior inconsistent statement must have been given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. Although the original United States Supreme Court proposal did not contain this limitation, the rule was limited by the House of Representatives before the federal rules were ultimately adopted. The rationale of the House Judiciary Committee in limiting the use of prior inconsistent state-

ments included the concern that, without the requirement that the statement must be sworn and recorded, disputes would arise as to whether the statement was ever made. Comm. On The Judiciary, H.R.Rep.No.93–650, 93rd Cong., 1st Sess. (1973); *see also* Weinstein and Berger, 4 Weinstein's Evidence, ¶ 801(d)(1)[01], at 801–81 (1979). We are now concerned with the same dispute.

The Arizona rule represents a codification of the existing case law regarding prior inconsistent statements. Thus, in *State v. Allen*, 117 Ariz. 168, 571 P.2d 665 (1977), we stated:

"One may certainly impeach an adverse witness. If the prior inconsistent statements are material, evidence of these statements may be introduced if the witness on cross-examination denies making the statements, claims no recollection of the statements or equivocates regarding his making the statements." *Id.* at 170, 571 P.2d at 667.

Yet, in the present case, we have a statement which does more than merely impeach the witnesses' statement; rather, it relates directly to the guilt of the defendant. This presents a situation where the possibility of prejudice is inordinately high and the reliability of the statement requires resolution of a swearing contest between the declarant and the person to whom the statement was allegedly made. *United States v. Cunningham*, 446 F.2d 194, 198 (2d Cir. 1971), *cert. denied*, 404 U.S. 950, 92 S.Ct. 302, 30 L.Ed.2d 266. Here, the alleged statement made by Viviana Cruz was especially prejudicial due to the fact that it contained an alleged admission by the appellant which, if believed by the jury, established the appellant's guilt.

■ Even though an out-of-court statement may be used to cast doubt on a witness' credibility, when it contains the dual purpose of tending to prove a defendant's guilt, it should not be admitted. *People v.*

---

* Rule 801(d)(1) provides:

(d) Statements which are not hearsay. A statement is not hearsay if—

(1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, . . .

*Ward,* 63 Ill.App.3d 864, 872, 20 Ill.Dec. 674, 680, 380 N.E.2d 883, 889 (1978); *see also United States v. Morlang,* 531 F.2d 183 (4th Cir. 1975). We feel such a limitation is necessary in light of the fact that impeachment evidence may be used substantively. *State v. Skinner,* 110 Ariz. 135, 515 P.2d 880 (1973). At the same time, limiting prior inconsistent statements in such a manner allows greater flexibility than the unduly restrictive version contained in the federal rule.

As noted in the comment to 17A A.R.S. Rules of Evidence, rule 801, "[l]ike all other rules which favor the admission of evidence, the exceptions to the hearsay rule are counterbalanced by Rules 102 and 403." With these considerations in mind, we conclude that the trial court erred by allowing Santana's testimony to be admitted.

We must next determine whether the admission of Santana's statement constituted prejudicial error. The resolution of this question depends on whether there is a reasonable possibility under the facts that the verdict might have been different had the error not been committed. *State v. Powers,* 117 Ariz. 220, 224, 571 P.2d 1016, 1020 (1977).

Although there was evidence that the appellant had threatened Mollon, these threats occurred immediately before the shooting. The only other testimony which indicates appellant may have threatened to shoot Mollon well before the actual incident is so liberally dosed with hearsay as to make it totally unreliable. Therefore, the testimony of Rosemary Santana was especially damaging in that it tended to show that this was a murder and not manslaughter and also acted to negate the other defense theories of self-defense and temporary insanity. Under these circumstances we cannot say that this was harmless error.

Finally, the state contends that the appellant waived any objection to Santana's testimony because defense counsel made no objection to Santana's *answer.* In view of the fact that defense counsel raised a hearsay objection at the beginning of the testimony concerning the conversation and was

overruled, this contention does not merit discussion.

Accordingly, we must reverse and remand for a new trial.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.