NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

STEPHAN JAMAL JONES, *Appellant*.

No. 1 CA-CR 18-0468
FILED 9-26-19
AMENDED PER ORDER FILED 9-30-19

Appeal from the Superior Court in Maricopa County
No. CR2017-144340-001
The Honorable Kathleen H. Mead, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge David D. Weinzweig joined.

**T H U M M A**, Judge:

**¶1**        Stephan Jamal Jones appeals his convictions and sentences for assault and two counts of aggravated assault. He argues the superior court made three reversible evidentiary errors. First, he asserts the court admitted impeachment evidence that violated the Arizona Rules of Evidence. Second, the court erred by admitting evidence of an order of protection that he argues was irrelevant and unfairly prejudicial. Third, the court abused its discretion by denying his motion for mistrial after the State, in the presence of the jury, referred to "jail calls," suggesting Jones had been incarcerated. Because Jones has shown no reversible error, his convictions and sentences are affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**        Jones and the victim, S.W., were in a romantic relationship. One morning in November 2016, S.W. called her mother seeking help. Her mother rushed to S.W.'s home and found S.W. drifting in and out of consciousness with blood running down her face. After receiving treatment from paramedics, S.W. told them Jones had punched her in the face and the ribs. She also told a police officer, a detective, a physician, and two social workers that Jones had caused her injuries.

**¶3**        A jury found Jones guilty of assault and two counts of aggravated assault for breaking S.W.'s ribs, breaking her orbital bone and otherwise causing her physical injury. He was sentenced to ten years' imprisonment. This court has jurisdiction over Jones' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona

---

[1] This court views the facts in a light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509 ¶ 93 (2013).

Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A) (2019).[2]

## DISCUSSION

### I. Jones Has Shown No Error In The Admission Of Impeachment Evidence.

¶4 At trial, the victim testified inconsistently with what she told the police, paramedics and others on or soon after she suffered her injuries. The victim also testified that she could not remember what occurred on the day she suffered her injuries. She could not remember speaking with the paramedics, law enforcement, the physician or the social workers. She first testified that she never told anyone that Jones caused her injuries and that someone other than Jones assaulted her. The State presented testimony from the police officer, the detective and the social workers to impeach the victim's testimony. On appeal, Jones argues the use of this impeachment evidence as substantive evidence of guilt was error and unfairly prejudicial. Because Jones did not timely object, this court reviews for fundamental error resulting in prejudice. *State v. Escalante*, 245 Ariz. 135, 138 ¶ 1 (2018).

¶5 Although a prior inconsistent statement generally may be admitted as substantive evidence of guilt in Arizona state court, Ariz. R. Evid. 801(d)(1)(A), other evidentiary rules may preclude admission of such evidence, *State v. Allred*, 134 Ariz. 274, 276–77 (1982).[3] To be admissible, a prior inconsistent statement used for substantive purposes must also comply with Arizona Rule of Evidence 403. In this context, when assessing the danger of unfair prejudice or other mischief addressed in Rule 403, the court is directed to consider various factors, including whether:

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[3] As noted by the State on appeal, without dispute by Jones in reply, in allowing S.W. to be impeached with her prior statements, the superior court tacitly concluded that S.W.'s alleged memory loss was feigned, meaning her responses at trial that she did not recall various statements were deemed inconsistent with her prior statements. *State v. Joe*, 234 Ariz. 26, 29 ¶ 14 (App. 2014) (citing cases); *see also State v. Moody*, 208 Ariz. 424, 449 ¶ 81 (2004) ("Although the trial court's [ruling] included no specific findings, we presume that the court was aware of the relevant law and applied it correctly in arriving at its ruling[.]").

> 1) the witness being impeached denies making the impeaching statement, and 2) the witness presenting the impeaching statement has an interest in the proceeding and there is no other corroboration that the statement was made, or 3) there are other factors affecting the reliability of the impeaching witness, such as age or mental capacity, . . . 4) the true purpose of the offer is substantive use of the statement rather than impeachment of the witness, 5) the impeachment testimony is the only evidence of guilt.

*Allred*, 134 Ariz. at 277; *see also State v. Cruz*, 128 Ariz. 538, 540–41 (1981).

¶6        *Allred* assessed these factors when confirming that admission of prior inconsistent statements constituted prejudicial error in *Cruz*. *Allred*, 134 Ariz. at 277–78. In *Cruz*, the defendant was tried for second-degree murder. The victim's girlfriend testified that the defendant's sister told her that the defendant said he was going to shoot the victim. *Cruz*, 128 Ariz. at 539–40. The defendant's sister denied making that statement. *Id.* at 539. Although the testimony of the victim's sister contained a prior inconsistent statement admissible under Rule 801(d)(1)(A), *Cruz* found the statement to be inadmissible for other reasons. *Id.* at 541. The statement lacked any substantial corroboration. *Id.* The impeaching witness, the victim's girlfriend, was interested in the outcome of the proceeding. *Id.* at 539. The impeachment of the defendant's sister was collateral to the use of the impeaching statement as substantive evidence of guilt. *Id.* at 540–41. Moreover, *Allred* was partially based on the concern that the key issue of guilt "[was] likely to turn upon the resolution of an issue of credibility in a 'swearing contest' between interested witnesses from 'opposing camps.'" *Allred*, 134 Ariz. at 277.

¶7        This case is different. Although the purpose of the impeaching testimony was or may have been substantive, the other *Allred* factors indicate that the danger of unfair prejudice did not substantially outweigh the statements' probative value. S.W. admitted she told witnesses Jones caused her injuries. Six witnesses corroborated that S.W. made those statements. No evidence suggests — and Jones does not argue — that the reliability of these witnesses was impaired.

¶8        Jones does claim that the detective and police officer should be considered interested witnesses because the evidence they obtained was

inadmissible under the Arizona Rules of Evidence. The record lacks any indication that the witnesses were not acting in their professional capacities or that they had personal interests in the outcome. Whether their investigation yields admissible evidence does not alter that conclusion. Further, the impeaching statements were not the only evidence of guilt. Two witnesses, a treating physician and a paramedic, both testified — under the medical-treatment exception to the rule against hearsay — that S.W. said her injuries were caused by her boyfriend (Jones). Ariz. R. Evid. 803(4). The jury also heard evidence that S.W. sought an order of protection against Jones with reference to the charged incident. In this case, there was no concern — as there was in *Cruz* — that the key issue of guilt hinged on a credibility issue between interested witnesses. Accordingly, the court did not err, let alone fundamentally err, in admitting the evidence.

**II.     Jones Has Not Shown Error In The Admission Of The Order Of Protection Evidence.**

**¶9**          During the State's case-in-chief, a detective testified about the order of protection that S.W. obtained against Jones almost one year after the charged incident, but based on the charged incident. The detective also explained what an order of protection is, why someone might seek one and the scope of such an order. He described it, in relevant part, as follows: "if . . . the victim . . . feels like their life is in danger or in fear of injury from the other party, including their children, they can get a protection order." Jones objected on relevance, which the court overruled. On appeal, he argues the testimony was not only irrelevant but also unfairly prejudicial. Because Jones did not object to the testimony on grounds of unfair prejudice, this court reviews that claim for fundamental error resulting in prejudice. *Escalante*, 245 Ariz. at 138 ¶ 1. The ruling on relevance is reviewed for an abuse of discretion. *State v. Childress*, 222 Ariz. 334, 338 ¶ 9 (App. 2009).

**¶10**          Evidence is relevant if "it has any tendency to make a [material] fact more or less probable than it would be without the evidence." Ariz. R. Evid. 401. This evidence was relevant given the victim testified Jones did not cause her injuries, and her credibility also became a material issue at trial. The detective's generalized explanation of an order of protection provided a basic understanding so the jurors could assess whether or how it would affect the victim's credibility. Specifically, the evidence of the victim obtaining an order of protection against Jones with reference to the charged incident impeached the victim's trial testimony that Jones did not cause her injuries.

**¶11**        Relevant evidence may be precluded if, among other things, its probative value is substantially outweighed by a danger of unfair prejudice. *See* Ariz. R. Evid. 403. Jones argues the testimony surrounding the order of protection implicitly suggested he was a "bad man" because the victim obtained the order of protection nearly a year after the charged incident. Jones has not shown that the admission of the evidence rose to the level of fundamental error. The evidence was strictly limited to a generalized discussion of protective orders and the charged incident; it did not refer to any other act committed by Jones. The jury was instructed to base its verdicts solely on the presented evidence and not to guess about any fact. Because jurors are presumed to follow the court's instructions, the evidence presented did not create a substantial danger of unfair prejudice based on this alleged implicit suggestion. *See State v. Newell*, 212 Ariz. 389, 403 ¶ 68 (2006).

**¶12**        Jones also claims allowing evidence of the order of protection violated Arizona Rules of Evidence 404. Again, the testimony surrounding the protective order discussed no other crime, wrong or act committed by Jones but, rather, was limited to issues of S.W.'s credibility. Therefore, Rule 404 does not apply.

### III.    Jones Has Not Shown The Court Erred In Denying His Motion For Mistrial.

**¶13**        The State intended to present evidence of phone calls made between the victim and the defendant when he was incarcerated before trial. When addressing the foundation of that evidence, the State mentioned that the calls were "jail calls." Jones later moved for mistrial because of the State's reference to his incarceration status. The court denied his motion. Jones now claims that this denial was error, arguing that the disclosure of his custody status violated the presumption of innocence.

**¶14**        This court reviews the denial of a motion for a mistrial for an abuse of discretion. *State v. Welch*, 236 Ariz. 308, 314 ¶ 20 (App. 2014). Two factors are particularly relevant to that inquiry: "(1) whether the remarks called to the attention of the jurors matters that they would not be justified in considering in determining their verdict, and (2) the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks." *State v. Stuard*, 176 Ariz. 589, 601 (1993). Mistrial is "the most dramatic remedy for trial error and should only be granted when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Dann*, 205 Ariz. 557, 570 ¶ 43 (2003).

**¶15** Here, the better course would have been for the jury to hear no reference to "jail." But even if that single reference by the prosecutor caused the jurors to believe Jones had been incarcerated at some point, the record does not support a conclusion that the jury was influenced by the reference. Before the "jail calls" comment, the jury had already heard evidence that Jones had been arrested. The jury's knowledge of custody status does not necessarily deny a defendant the presumption of innocence. *See State v. Murray*, 184 Ariz. 9, 35 (1995) ("[c]ertainly the jurors were aware that defendants were arrested and had spent some time in custody prior to trial . . . [s]uch knowledge is not prejudicial and does not deny defendants the presumption of innocence."). And the jury was instructed that the lawyers' comments are not evidence and that the jury's consideration was confined to the facts from the testimony and admitted exhibits. Because jurors are presumed to follow their instructions, it is presumed they did not consider the State's isolated remark when reaching their verdicts. *Newell*, 212 Ariz. at 403 ¶ 68.

**¶16** To support his argument, Jones cites *Estelle v. Williams*, 425 U.S. 501, 512 (1976) (holding government may not compel a defendant to be tried in identifiable prison clothes) and *Deck v. Missouri*, 544 U.S. 622, 624 (2005) (defendants generally may not be placed in visible shackles in the guilt phase). These cases, however, do not resemble this case. The State's single remark does not serve as the same "constant reminder" of the defendant's condition that can affect a juror's judgment like identifiable prison clothing or visible shackling. *Estelle*, 425 U.S. at 504–05.

## CONCLUSION

**¶17** Because Jones has shown no reversible error, his convictions and sentences are affirmed.

