728 P.2d 243

The STATE of Arizona, Appellee,

v.

William MORAN, Appellant.

No. 2 CA–CR 3827.

Court of Appeals of Arizona,
Division 2, Department B.

Sept. 18, 1985.

374

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and David R. Cole, Phoenix, for appellee.

S. Jeffrey Minker, Tucson, for appellant.

LIVERMORE, Judge.

This is an appeal from a jury verdict of guilty on one count of child molestation and two counts of sexual abuse, both of defendant's daughter. A verdict of not guilty was returned on Count I, sexual abuse of a friend of the daughter, Lynette J. Defendant also appeals the aggravated sentence of 14 years on Count II, which runs concurrently with the 2.5-year sentences on Counts III and IV.

Defendant, married for 17 years to the victim's mother, is the father of three children, two sons and the daughter. The daughter's complaint to authorities of sexual molestation by her father came to light after she went to her school principal, at the urging of her friend Lynette, and told him that her father had been having sexual contact with her since she was five years old. School officials, already in communication with authorities because of a similar complaint against defendant by Lynette, called in sheriff's deputies to investigate. The taped statement made to authorities at that time provided the basis for the arrest of and charges against the father.

At trial, the daughter was the first prosecution witness. She recanted her accusations against her father under oath. She did not deny having made the accusations earlier and confirmed that she had told school authorities, two detectives, two therapists, her mother, her foster mother, her friend Lynette and Lynette's mother that her father had molested her. The state proceeded to bring on the school psychologist, who reported Lynette's accusations against appellant; the school counselor, to whom the daughter and Lynette related their stories; and the school principal to

whom the daughter and Lynette had repeated the story of molestation earlier given to the counselor. Thus, three school professionals testified to the girls' complaint against the defendant. Two psychologists who had evaluated or were treating the daughter at the behest of Child Protective Services testified to her statements, as did two detectives. In addition, her tape-recorded statement to the detectives was played for the jury. No other evidence beyond the prior inconsistent statements was offered at trial to establish that a crime had been committed or that defendant had committed it.

■ Defendant argues that it was improper to admit the daughter's prior inconsistent statements as the only evidence of his guilt. By its terms, the prior statements of the defendant's daughter were admissible as substantive evidence under Rule 801(d)(1)(A), Rules of Evidence, 17A A.R.S. The reason that such out-of-court statements are admissible as against the hearsay ban was well expressed by Professor Morgan:

> "If [the witness] concedes that he made the statement but now swears that it wasn't true, the experience in human affairs which the average trier brings to a controversy will enable him to decide which story represents the ·truth in the light of all the facts, such as the demeanor of the witness, the matter brought out on his direct and cross-examination, and the testimony of others. In any of these situations Proponent is not asking Trier to rely upon the credibility of any one who is not present and subject to all the conditions imposed upon a witness. Adversary has all the protection which oath and cross-examination can give him. Trier is in a position to consider the evidence impartially and to give it no more than its reasonable persuasive effect. Consequently there is no real reason for classifying the evidence as hearsay." Morgan, *Hearsay Dangers and the Application of the Hearsay Concept*, 62 Harv.L.Rev. 177, 196 (1948).

That view has been adopted by all the great masters of the law of evidence. See American Law Institute, Model Code of Evidence 234 (1942); Maguire, The Hearsay System: Around and Through the Thicket, 14 Vand.L.Rev. 741, 747 (1961); C. McCormick, Evidence § 251 (3d ed. 1984); 3A J. Wigmore, Evidence § 1018 at 996 (Chadbourn rev. 1970). And because cross-examination at trial affords "the trier of fact a satisfactory basis for evaluating the truth of the prior statement," admission of that statement as substantive evidence does not violate the Confrontation Clause. *California v. Green*, 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489, 498 (1970).

Given the strength of the rationale underlying Rule 801(d)(1)(A), its constitutionality, and the unanimity of scholarly opinion supporting it, the rule ought not lightly be eviscerated by holding, as defendant requests, that the jury in this case ought not be allowed to hear the evidence because of Rule 403. To adopt that proposition is to treat such evidence as somehow more suspect, less probative than other evidence that is admitted and allowed to support a conviction. For the reasons advanced by Professor Morgan, and discussed below with respect to the facts of this case, we believe that position wrong.

The daughter's testimony covers seventy-eight pages of transcript and occupied much of the first day of trial. She admitted making the prior statements to school officials, her mother, friends, police, and psychologists over a six-month period of time. Her reason, she said, was to get out of the house to live with a friend because of anger at her parents. Pointing the other way were prior statements concerning threats by her father and her desire to go home (admitted by her on the stand) which she thought she could accomplish by repudiating her charges. In addition, experts testified that the literature on child molestation established that recantation was not unusual among victims because of the emotional difficulty of breaking up a home by sending one's parent to jail. Further, the jury could have easily understood that the loneliness of being with foster parents

might have induced her to recant so as to be able to live with her family.

It seems clear that the jury was given a very full basis to judge which of the statements were true. To say that the jury's judgment was impermissible is to create an artificiality in the law. Had the daughter charged, then recanted, then testified against her father with exactly the same reasons offered to explain her inconsistencies, and had the jury convicted, we would affirm. The strength of the evidence of guilt would be identical in both cases. It makes no sense to distinguish results by which version is offered at trial. Instead we should only ask, looking at the entire record, whether a reasonable jury could have found guilt beyond a reasonable doubt.

*State v. Allred,* 134 Ariz. 274, 278, 655 P.2d 1326, 1330 (1982), however, holds that a statement otherwise admissible under Rule 801(d)(1)(A) should be excluded under Rule 403 if "its probative value is substantially outweighed by the danger of prejudice, confusion or misleading the jury." That test, the court held, was met when the alleged maker of the prior statement denied making it, where the prior statement was the only evidence that a crime had been committed, where there was no corroboration that the statement had been made, and where the maker of the statement was a very young child. The reliability of the statement was so suspect that it ought to have been excluded.

■ The facts in the present case are in marked contrast to those in *Allred.* The witness did not deny making the statements. She was sixteen and quite clearly competent as a witness. The statements were amply corroborated; indeed, there were many of them over a substantial period of time, unlike the single sentence involved in *Allred.* There is nothing to suggest that the jury's belief in these prior statements was unfair or unjust. In these circumstances, Rule 403 ought not require exclusion. Unless *Allred* states a per se rule of exclusion where the prior statement is the only evidence that a crime was committed, and it does not purport to, then the statements in this case were properly admitted. They were also sufficient to establish defendant's guilt.

■ Defendant next argues that a portion of the cross-examination of him by the prosecutor was improper. The trial judge initially allowed this examination but then, when a mistrial was sought, concluded that it was improper. He denied the mistrial on the ground that this brief episode in a six-day trial did not prejudice the defendant. We are required to defer to the trial judge on this assessment absent an abuse of discretion. *State v. Koch,* 138 Ariz. 99, 673 P.2d 297 (1983). Because the examination was initially allowed by the court and thus was not an effort by the prosecutor to introduce evidence thought inadmissible, because the objectionable matter was but a momentary distraction from the real issues in the case, and because no mention of that which was objectionable was made in closing argument, we conclude that the trial court did not abuse its discretion in denying a mistrial.

[5, 6] Defendant's next contention is that some of the expert testimony was inadmissible. Addressing only those matters to which objection was made, we find that the trial court did not abuse its discretion. The primary issue in this case was whether to believe the daughter's pretrial statements or her trial recantation. Experts, or anyone else, who observed her demeanor and behavior during these pretrial statements, could testify to their observations, both as they might substantiate that the episode occurred and that she was truthful about it. Thus, in *State v. Thomas,* 130 Ariz. 432, 434, 636 P.2d 1214, 1216 (1981), witnesses were permitted to testify that the alleged victim of child molestation exhibited "marked personality changes" after the episode on the ground that "any evidence which substantiates the credibility of a prosecuting witness on the question of guilt is relevant and material." Although not entirely clear, this appears also to be the ruling in *State v. Huey,* 145 Ariz. 59, 699 P.2d 1290 (1985). See also *State v.*

*Radjenovich,* 138 Ariz. 270, 674 P.2d 333 (App.1983). And, in *State v. Peeler,* 126 Ariz. 254, 614 P.2d 335 (App.1980), we held that where a hearsay declarant's excited utterance was sought to be impeached by evidence of her incompetence, it could be rehabilitated by evidence of her competent demeanor by one who observed it at the time of the utterance. So also, expert testimony of the phenomenon of recantation among victims of child molestation was properly admitted to assist the jury in deciding whether to believe the daughter's prior statements or her trial testimony.

■ The real burden of defendant's attack on the admission of this expert evidence is not that it was incompetent but rather that the jury was likely to overvalue it by relying on the expert's obvious belief in the truthfulness of the daughter's earlier statements instead of making its own determination of relative credibility. It is impossible to refute this speculation save by adherence to the general notions underlying the jury system, that the good common sense of jurors will discern that which is true from that which is false. Because any evidence can be overvalued, any evidence could be excluded on the ground that a risk of overweighting existed. Expert evidence may create a special risk but when expert information is necessary, it can hardly be excluded on that ground. We have examined the testimony in this case with care; we conclude, as did the trial court, that its probative value was not outweighed, let alone "substantially outweighed" under Rule 403, by a risk of prejudice or of misleading the jury. We are reinforced in this view by the effective cross-examination of the experts by defense counsel below and by his closing argument. In the context in which the evidence was introduced in this case, it appears unlikely that it would have misled the jury.

■ Defendant argues that the trial court aggravated his sentence because of prior convictions not shown to have been obtained while he was represented by counsel. Given the presumption of regularity of judicial proceedings, *Bill v. Gossett,* 132 Ariz. 518, 647 P.2d 649 (App.1982), and the fact that at the time of defendant's prior convictions counsel was constitutionally required, we hold that defendant must offer some evidence that prior convictions were obtained without counsel before the court must disregard proved prior convictions. See *State v. Miller,* 108 Ariz. 303, 497 P.2d 516 (1972); *State v. Tramble,* 116 Ariz. 249, 568 P.2d 1147 (App.), cert. denied, 434 U.S. 974, 98 S.Ct. 530, 54 L.Ed.2d 465 (1977). Even if the prosecutor must show that defendant was represented by counsel, the affidavit of an investigator that he had been told by the clerk of court where the convictions were entered that the records of that office showed that defendant had been represented by counsel was adequate. Reliable hearsay of this sort has always been allowed in sentencing hearings. See *State v. Conn,* 137 Ariz. 148, 669 P.2d 581 (1983).

■ Defendant's final contention is that the trial court erred in denying a motion for new trial based on newly discovered evidence. One item of evidence was a sheet of paper prepared by the daughter, when she anticipated being a witness against her father, with notes on how she should testify. The other was a witness who would testify that the daughter had recanted to him prior to trial. As to the first item, it is susceptible to an inference of earlier fabrication of her charges by the daughter. However, since she testified to having fabricated at trial, the exhibit was at best cumulative and impeaching. Beyond that, by the time of trial, the daughter was a defense witness, in effect, and no showing has been made by defense counsel why this sheet of paper could not have been obtained in the exercise of due diligence. As to the second item, the daughter admitted that recantation at trial. Given the nature of this evidence, it was not an abuse of discretion to deny the motion. *State v. Fisher,* 141 Ariz. 227, 686 P.2d 750 (1984); *State v. Hankins,* 141 Ariz. 217, 686 P.2d 740 (1984).

The judgments and sentences are affirmed.

HATHAWAY, P.J., and LACAGNINA, J., concur.