NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

GEORGE ALLAN LOADER, *Appellant*.

No. 1 CA-CR 14-0561
FILED 9-1-2015

---

Appeal from the Superior Court in Mohave County
No. S8015CR201101308
The Honorable Steven F. Conn, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Law Office of Daniel DeRienzo, PLLC, Prescott Valley
By Daniel J. DeRienzo
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Lawrence F. Winthrop joined.

_____

**J O H N S E N, Judge**:

**¶1**        George Allan Loader appeals his convictions and sentences for first-degree murder, a Class 1 felony; misconduct involving weapons, a Class 4 felony; and abandonment of a dead body, a Class 5 felony.  For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND[1]

**¶2**        At trial, Loader denied killing the victim.  He testified that after his toddler indicated the victim had molested her, he engaged in a fight with the victim and during that altercation, the victim grabbed a shotgun off a nearby table and accidentally shot himself in the neck.  Loader, however, had told his sister shortly after the incident that he had shot the victim.  Moreover, the medical examiner testified the butt of the shotgun was higher than the barrel when the shot was fired into the left side of the victim's neck, and a firearms examiner testified that it took two hands for him to manipulate the gun to get it to fire.

**¶3**        Loader admitted dismembering the victim, dumping the body, and setting fire to the remains, but defended the abandonment-of-a dead-body charge on the basis he was guilty but insane.  A psychologist testifying on Loader's behalf diagnosed Loader with paranoid schizophrenia and dissociative identity disorder and opined that Loader did not believe he was doing anything wrong by dismembering the victim's body in an effort to avoid being "inappropriately . . . blamed for something for which he was blameless."  The State's psychiatrist testified, however, that Loader had admitted using methamphetamine "relatively heavily" in the month before the incident.  The psychiatrist testified Loader suffered from "methamphetamine induced psychotic disorder in an active phase prior to incarceration," "polysubstance dependence influenced by institutional

_____

[1]        We view the trial evidence in the light most favorable to sustaining the jury's verdicts.  *See State v. Nelson*, 214 Ariz. 196, 196, ¶ 2 (App. 2007).

remission," and antisocial personality disorder; and that Loader knew that the dismemberment was wrong when he did it.

¶4 The jury convicted Loader of the charged offenses and found that he committed them while on release for a prior offense. The superior court sentenced him to consecutive sentences of natural life for murder, ten years for misconduct involving weapons, and five years for abandonment of a dead body, and added two years to each sentence based on the jury's finding that he was on release for a prior offense. Loader filed a timely notice of appeal, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

### A. Admission of Prior Inconsistent Statement.

¶5 The superior court admitted a recording of Loader's sister's pretrial statements to police as prior inconsistent statements based on Loader's suggestions in calls to her from jail that she recant and the sister's subsequent feigned memory loss. Loader argues the court erred because there was insufficient evidence his sister was feigning memory loss at trial. He also argues the court erred by failing to *sua sponte* conduct the proper legal analysis for use of the statements as substantive evidence of his guilt. Because Loader did not raise these issues in the superior court, we review them only for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005); *State v. Bolton*, 182 Ariz. 290, 304 (1995). Loader accordingly bears the burden of demonstrating that the court erred in admitting the recording, that the error was fundamental and that he was prejudiced thereby. *See Henderson*, 210 Ariz. at 568, ¶ 22.

¶6 A prior statement is not hearsay if the declarant testifies, the statement is inconsistent with the declarant's testimony, and the declarant is subject to cross-examination about it. Ariz. R. Evid. 801(d)(1)(A). "A claimed inability to recall, when disbelieved by the trial judge, may be viewed as inconsistent with previous statements . . . ." *State v. King,* 180 Ariz. 268, 275 (1994) (quoting *United States v. Rogers*, 549 F.2d 490, 496 (8th Cir. 1976)). The superior "court has considerable discretion in determining whether a witness's evasive answers or lack of recollection may be considered inconsistent with that witness's prior out-of-court statements." *State v. Hausner*, 230 Ariz. 60, 76, ¶ 60 (2012) (quoting *State v. Salazar*, 216 Ariz. 316, 319, ¶ 15 (App. 2007)).

¶7 The superior court did not abuse its considerable discretion by admitting the recording. Although Loader's sister suggested that she did not remember precisely what Loader told her immediately after the incident because she had taken Ambien, Loader's jail calls asking her to recant, coupled with her

apparent reluctance to testify, support the court's conclusion that she was feigning her memory loss. The court was in the best position to weigh the credibility of this witness's assertion that she did not remember whether Loader had told her that he had killed the victim (contrary to his defense at trial) or had "just chopped him up" (consistent with his defense at trial). *See State v. Olquin*, 216 Ariz. 250, 252, ¶ 10 (App. 2007) (superior court "is in the best position to make [credibility] determination."). Because the record supports the court's finding that she was feigning memory loss, the court did not abuse its discretion in admitting her statements to police as prior inconsistent statements. *See State v. Robinson*, 165 Ariz. 51, 58-59 (1990) (superior court did not abuse its discretion in admitting prior inconsistent statement when record suggested reasons for witness to be evasive, even though court was uncertain whether witness simply had poor recollection).

¶8 Nor did the superior court commit fundamental error in admitting the prior inconsistent statements as substantive evidence of Loader's guilt under *State v. Allred,* 134 Ariz. 274, 276-78 (1982). Among the factors our supreme court stated in that case should be considered in addressing the potential for unfair prejudice from the use of impeaching testimony as substantive evidence of guilt are whether: (1) the witness being impeached denies making the statement; (2) the witness presenting the impeaching statement has an interest in the proceeding and there is no other corroboration that the statement was made; (3) other factors, such as age or mental incapacity, affect the reliability of the impeaching witness; (4) the "true purpose of the offer is substantive use of the statement rather than impeachment of the witness"; and (5) "the impeachment testimony is the only evidence of guilt." *Allred*, 134 Ariz. at 277. The only factor supporting preclusion of the impeaching statements here on grounds of unfair prejudice is that the "true purpose" of the offer of the statements was as substantive evidence of Loader's guilt. The other factors do not support preclusion: Loader's sister admitted making the statements; the impeaching statements were recorded, supplying independent, non-biased corroboration that the statements were made; circumstantial evidence supplied other evidence of Loader's guilt; and the reliability of the recording evidencing the impeaching statements was not at issue. Under these circumstances, the court did not err, much less fundamentally err, in admitting the prior inconsistent statements.

## B.    Consecutive Sentences.

¶9 Loader argues that the superior court erred in imposing a consecutive sentence for misconduct involving weapons because the use of the weapon in the murder constituted a single act requiring concurrent sentences. Because Loader did not raise this objection in the superior court, we again review for fundamental error only. *Henderson*, 210 Ariz. at 568, ¶ 22.

**¶10**         Arizona Revised Statutes § 13-116 provides that "[a]n act . . . which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." The evidence here supported a finding that the offenses of murder and misconduct involving weapons arose from separate and distinct acts, making consecutive sentences permissible under A.R.S. § 13-116.  The evidence demonstrated that Loader fatally shot the victim in the garage with a 12-gauge shotgun.  Loader, a convicted felon and prohibited possessor, testified that in the days before the shooting, he had tinkered with this shotgun trying to get it to work and finished putting it back together shortly before the shooting.  Moreover, police executing a search warrant several days after the shooting found the shotgun in a chest of drawers in Loader's bedroom.  On this record, because separate and distinct acts supported the murder and misconduct-involving-weapons convictions, A.R.S. § 13-116 did not prohibit consecutive sentences.[2]

**C.     Insanity Instruction.**

**¶11**         Loader argues the superior court incorrectly instructed the jury by misstating in *voir dire* and failing to clarify in closing instructions that insanity could be based on a permanent mental disorder resulting from chronic drug use, rather than the result of acute intoxication.  Again, because Loader did not raise any objection in *voir dire* or ask for an additional instruction in closing arguments, he bears the burden of demonstrating that the court erred, that the error was fundamental, and that he was prejudiced thereby.  *See Henderson*, 210 Ariz. at 568, ¶ 22.

**¶12**         We review the adequacy of jury instructions in their entirety to determine if they accurately reflect the law.  *State v. Hoskins,* 199 Ariz. 127, 145, ¶ 75 (2000).  The instructions must not mislead the jury.  *State v. Noriega,* 187 Ariz.

---

2       The indictments charged Loader in pertinent part with first-degree murder, alleged to have occurred "[o]n or between the 21st and 22nd day of November 2011," and with misconduct involving weapons, which was alleged to have occurred "[o]n or between the 21st and 24th day of November 2011."  The evidence was undisputed that Loader possessed the shotgun in the few days before November 21 (the date he used it to murder the victim), until it was discovered in his bedroom drawer on November 25.  Contrary to Loader's argument on appeal, because the date is not an element of the offense of misconduct involving weapons, *see* A.R.S. § 13-3102(A)(4), the jury was not required to reach a unanimous verdict on the date of the offense, and the court did not err in imposing consecutive sentences based on the undisputed evidence of multiple acts.

282, 284 (App. 1996). We review *de novo* whether the instructions properly state the law. *State v. Orendain*, 188 Ariz. 54, 56 (1997).

¶13 The court did not err, much less fundamentally err, in instructing the jury on insanity. It instructed the jury:

> You must find the defendant guilty except insane if the defendant proves by clear and convincing evidence that at the time of the commission of the criminal act, he was afflicted with a mental disease or defect of such severity that he did not know the criminal act was wrong.
>
> A mental disease or defect does not include disorders that result from acute voluntary intoxication, or withdrawal from alcohol or drugs, character defects, psychosexual disorders, or impulse controlled [sic] disorders.
>
> Conditions that do not constitute legal insanity include but are not limited to momentary, temporary conditions arising from the pressure of the circumstances, moral decadence, depravity or passion growing out of anger, jealousy, revenge, hatred or other motives in a person who does not suffer from a mental disease or defect or an abnormality that is manifested only by criminal conduct.

This language was taken directly from statute, *see* A.R.S. § 13-502(A), and accordingly accurately stated the law and did not mislead the jury. Nor did the court's outline of the test for a verdict of guilty but insane during *voir dire* mislead the jury: The court accurately conveyed the concept that acute drug intoxication cannot support an insanity verdict.

¶14 The failure of the court to *sua sponte* define "acute voluntary intoxication" or to clarify that a mental disease could include a mental disorder caused by long-term chronic use of a drug was not error, much less fundamental, prejudicial error on this record. The court was not required to clarify that insanity could be predicated on a mental disease caused by chronic long-term drug use, given the absence of evidence that Loader suffered from a mental disorder caused by chronic long-term drug use that was of such severity that he did not know what he was doing was wrong. Arizona courts have recognized that insanity can be predicated on a permanent mental disease caused by chronic long-term drug or alcohol abuse. *See State v. Cooper,* 111 Ariz. 332, 334 (1974). The experts in this case testified that methamphetamine abuse could cause hallucinations and delusions lasting after the abuse stops, presenting a clinical picture indistinguishable from that of paranoid schizophrenia. Loader's expert testified, however, that it was Loader's paranoid schizophrenia, not any chronic long-term drug use, which led

him to think that what he was doing was not wrong. And the State's expert testified that, although prior to his incarceration, Loader met the criteria to be diagnosed with methamphetamine-induced psychotic disorder, he believed Loader knew that dismembering the body was wrong. Nor were the prosecutor's statements in closing argument misleading, as Loader argues on appeal: The prosecutor simply argued that Loader's chronic abuse of methamphetamine could not support his insanity defense.

¶15        On this record, the court did not err, much less fundamentally err, in failing to instruct the jury that chronic long-term drug use could support an insanity defense.

**CONCLUSION**

¶16        For the foregoing reasons, we affirm Loader's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama