NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RICARDO ADOLPHO MIRANDA, *Appellant.*

No. 1 CA-CR 22-0346
FILED 11-7-2023

Appeal from the Superior Court in Maricopa County
No. CR2017-105084-002
The Honorable Howard D. Sukenic, Judge, *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Law Office of Stephen M. Johnson, Inc., Phoenix
By Stephen M. Johnson
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Michael S. Catlett and Judge Maria Elena Cruz joined.

**W E I N Z W E I G**, Judge:

**¶1**　　　　Ricardo Adolfo Miranda appeals his conviction for first-degree murder and drive by shooting. Because we find no error, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　　Miranda was visiting his uncle's home when a man walked past the house and caught his uncle's attention. The uncle told Miranda he had previously seen this man with a knife in the neighborhood, and the uncle believed he was casing the house. Miranda left the house to follow the man. Miranda later drove past the man in a dark-colored pickup truck and shot him five times.

**¶3**　　　　Miranda fled the scene and called his cousin Tania, admitting he had shot someone and "wanted to leave the state." Tania obliged. She drove Miranda and his family to a house in California.

**¶4**　　　　By the time police arrived, the victim was dead. Police recovered a 40-caliber shell casing and projectile fragments at the scene. Police also discovered security cameras across the street, which recorded the victim, a dark four-door truck and taillights consistent with a Chevrolet truck. A witness also reported seeing a dark four-door pickup truck.

**¶5**　　　　About a week later, police received an anonymous tip connecting Miranda and his cousin Tania to the murder. Police verified that Miranda drove a dark-red 2007 Chevrolet four-door pickup truck, which was registered in his name. And by using cell phone data, police placed Miranda at the scene of the murder when it occurred. They also placed Tania between Phoenix and California later that night and the next morning.

**¶6**　　　　Police found and interrogated Tania, who admitted that Miranda had confessed to her and sought help fleeing the state. Tania admitted that she returned Miranda's truck to him in California about a month after the shooting. Police found the truck's passenger-side mirror in

2

her apartment. A bullet had damaged the mirror, entering through the mirror's face and exiting out the back casing.

¶7 Four months after the shooting, Los Angeles sheriff deputies and Phoenix police served a search warrant on the California house, where they found and seized Miranda's four-door Chevrolet, which had a 40-caliber handgun in the center consol. The handgun contained Miranda's DNA and ballistically matched a shell casing found at the scene of the shooting. The gun's serial number was scraped off. Police also found gunshot residue on the truck's passenger side, which corresponded with the bullet-damaged mirror.

¶8 The State charged Miranda with first-degree murder and drive-by-shooting. A fifteen-day trial was held. During trial, the State called Tania as a witness, but she claimed not to recall what she told police during the interrogation. Over Miranda's objection, the superior court allowed Detective Gonzalez to testify about Tania's statements during his interrogation. Miranda also requested special jury instructions on involuntariness, which the court denied. Finally, the court precluded Miranda from presenting a third-party defense. The jury found Miranda guilty on both counts. He appeals. We have jurisdiction. *See* A.R.S. §§ 12–120.21(A)(1), 13–4031, –4033(A)(1).

## DISCUSSION

¶9 Miranda raises several arguments on appeal. We analyze each in turn.

I. The California Search Warrant

¶10 Miranda first argues he was entitled to an evidentiary hearing because of factual inaccuracies in the California search warrant and attachments. *See Franks v. Delaware*, 438 U.S. 154 (1978). We review the superior court's ruling on a motion to suppress evidence for an abuse of discretion. *State v. Spears*, 184 Ariz. 277, 284 (1996). But we review de novo the denial of a request for an evidentiary hearing. *Frimmel v. Sanders*, 236 Ariz. 232, 238, ¶ 25 (App. 2014).

¶11 To get an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), Miranda must demonstrate the search warrant or warrant affidavit contained "specific allegations of deliberate falsehoods or reckless disregard for the truth." *Frimmel*, 236 Ariz. at 239, ¶ 30. But Miranda identified no false statements in these documents. Instead, he alleged inaccuracies in the "Return to Search Warrant," which was filed *after* the

search was conducted. Without false statements on the search warrant affidavits or the warrant itself, a *Franks* hearing was not required.

¶12 Miranda also argues the search was invalid because police officers violated California statutes. *See* Cal. Penal Code §§ 1530, 1536. We need not address the merits of these claims, however, because neither Arizona law nor California law recognize an exclusionary remedy for a statutory defect. *See* A.R.S. § 13–3925(A); *People v. Robinson*, 224 P.3d 55, 64 (Cal. 2010). We find no abuse of discretion.

II.     Detective Gonzalez's Testimony

¶13 Miranda next claims that Detective Gonzalez should not have been allowed to testify about Tania's interrogation statements because it violated the Confrontation Clause and her statements were hearsay. We review de novo challenges to admissibility based on the Confrontation Clause, *State v. Boggs*, 218 Ariz. 325, 333, ¶ 31 (2008), but review evidentiary decisions for an abuse of discretion, *State v. Forde*, 233 Ariz. 543, 564, ¶ 77 (2014), and will affirm the decision if correct for any reason, *State v. Perez*, 141 Ariz. 459, 464 (1984).

¶14 Detective Gonzalez's testimony did not violate the Confrontation Clause. U.S. Const. amend. VI. Both Tania and Detective Gonzalez testified at trial and were subject to cross-examination. *See State v. Carreon*, 210 Ariz. 54, 63, ¶ 36 (2005) ("[T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.") (cleaned up). And the Confrontation Clause is not violated just because a declarant forgets her prior statement. *See State v. Real*, 214 Ariz. 232, 235, ¶ 10 (App. 2007). We find no error.

¶15 Second, Detective Gonzalez's testimony about Tania's and Miranda's statements was not hearsay. *See* Ariz. R. Evid. 801(c), 805. Miranda's incriminating statements to Tania are opposing party's statements. Ariz. R. Evid. 801(d)(2). Tania's interrogation statements are prior inconsistent statements by a witness subject to cross examination. Ariz. R. Evid. 801(d)(1)(A). Because neither statement was hearsay, Detective Gonzalez's testimony was proper.

¶16 Even if admissible, however, we may exclude a prior inconsistent statement when used for purposes beyond impeachment under Arizona Rule of Evidence ("Rule") 801(d)(1)(A). *See generally*, *State v. Cruz*, 128 Ariz. 538, 540 (1981); *State v. Allred*, 134 Ariz. 274 (1982). We "focus on the danger of unfair prejudice when the impeaching testimony is

used for substantive purposes," and weigh that prejudice against the probative value of the testimony under Rule 403. *Allred*, 134 Ariz. at 277.

¶17            We consider five factors, including whether:

> 1) the witness being impeached denies making the impeaching statement, and 2) the witness presenting the impeaching statement has an interest in the proceeding and there is no other corroboration that the statement was made, or 3) there are other factors affecting the reliability of the impeaching witness, such as age or mental capacity, . . . 4) the true purpose of the offer is substantive use of the statement rather than impeachment of the witness, 5) the impeachment testimony is the only evidence of guilt.

*Id.*

¶18            We discern no error. These factors weigh in favor of admitting the testimony. Tania never denied she was interrogated. *See State v. Sucharew*, 205 Ariz. 16, 24 (App. 2003) (distinguishing *Cruz* because "this is not a case where the witness denied the existence of any such conversation."). Detective Gonzalez was not considered an interested witness. *State v. Miller*, 187 Ariz. 254 (App. 1996) ("A police officer is not per se 'interested' merely by virtue of his or her involvement in a criminal investigation"). The record contained evidence of guilt beyond the testimony in question. And Detective Gonzalez's testimony was corroborated: he took contemporaneous notes of the interrogation, the interrogation was recorded, and Detective Gonzalez reviewed the recording before testifying. *See State v. Beck*, 151 Ariz. 130, 133 (App. 1986) ("where the witness does not deny making the statements and where the impeaching witness is competent and the statements are corroborated, Rule 403 . . . does not require exclusion of the evidence due to its prejudicial effect.").

III.    Jury Instructions

¶19            Miranda next argues the superior court should have instructed the jury on witness voluntariness because Tania's interrogation statements might have been involuntary. We review the refusal of a jury instruction for an abuse of discretion. *State v. Hurley*, 197 Ariz. 400, 402, ¶ 9 (App. 2000).

¶20            Parties are entitled to jury instructions "on any theory of the case reasonably supported by the evidence," *State v. Shumway*, 137 Ariz.

585, 588 (1983), but the superior court need not give an instruction that "does not fit the facts of the particular case, or is adequately covered by the other instructions," *State v. Hussain*, 189 Ariz. 336, 337 (App. 1997).

**¶21** Here, the evidence does not reasonably show that Tania's statements were involuntary. Tania was handcuffed during her interrogation, but that alone does not show coercion. *See State v. Moody*, 208 Ariz. 424, 468, ¶¶ 200–01 (2004). Without a showing that a witness' statements were coerced, a jury instruction on voluntariness was inappropriate. Additionally, the superior court provided the standard instructions on witness credibility, which adequately cover witness voluntariness. *See* RAJI Stand. Crim. 15. The court did not abuse its discretion.

IV. Third Party Claim

**¶22** Finally, Miranda argues he was entitled to present a third-party defense implicating Aaron Saucedo, known as "the Maryvale Shooter," as the murderer. We review the admissibility of third-party culpability evidence for abuse of discretion. *State v. Prion*, 203 Ariz. 157, 161, ¶ 21 (2002). We find no error.

**¶23** Third-party culpability evidence is not relevant under Rule 401 when it "offers only a possible ground of suspicion against another." *Prion*, 203 Ariz. at 161, ¶ 21. *See* Ariz. R. Evid. 401, 402. At a minimum, such evidence must "create a reasonable doubt as to the defendant's guilt." *State v. Gibson*, 202 Ariz. 321, 324, ¶ 16 (2002).

**¶24** Miranda did not meet this standard. He offered no evidence connecting Saucedo to the shooting, the victim or the weapon. Murder suspects do not automatically receive a third-party defense just because a serial shooter is active in the city. This evidence also confuses the issues and misleads the jury under Rule 403. *See* Ariz. R. Evid. 403; *State v. Machado*, 226 Ariz. 281, 284, ¶ 16, n.2 (2011). The superior court properly excluded the evidence.

**CONCLUSION**

¶25       We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA